404 F.2d 856
 68-2 USTC P 9465
 MORRISON FLYING SERVICE, a Montana corporation, Appellant,
v.
DEMING NATIONAL BANK, a national banking corporation, Cisco
Aircraft, Inc., a corporation, and National City
Aircraft Leasing Co., a corporation, Appellees.
United States of America, Intervenor. and Appellee.
 No. 9547.
 United States Court of Appeals Tenth Circuit.
 May 17, 1968, Certiorari Denied Jan. 13, 1969, See 89 S.Ct.
628.
 
 A. W. Scribner, Helena, Mont., (Garland, Martin & Martin, Las Cruces, N.M., on the brief), for appellant.
 Benjamin M. Sherman, Deming, N.M., for appellee Deming Nat. Bank.
 Marco S. Sonnenschein, Atty., Dept. of Justice, Washington, D.C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Crombie J. D. Garrett, Attys., Dept. of Justice, Washington, D.C., on the brief), for appellee and intervenor United States.
 Before MURRAH, Chief Judge, HILL, Circuit Judge, and CHRISTENSEN, District Judge.
 HILL, Circuit Judge.
 
 
 1
 This controversy is here for a second time. In the first appeal we reversed the trial court on an order entered granting the Bank a summary judgment.[1] At that stage of the case Morrison was only seeking a judgment against the Deming National Bank upon the grounds recited in our former opinion. After remand, by Amended Complaint, Morrison pleaded additional causes of action against the Bank, Cisco Aircraft, Inc., and National Dity Aircraft Leasing Company, claiming a prior equitable lien upon the contract proceeds still held by the Bank superior to any claim by Cisco or National City to such funds. Service was procured upon Cisco and National City under 28 U.S.C. 1655. Neither Cisco nor National City answered or appeared and default judgments were entered against each of them, adjudging that appellants' claim to the contract proceeds held by the Bank was prior to any claim of either Cisco or National City to such proceeds. Appellee, United States of America, intervened in the 1655 phase of the case and claimed a prior lien upon the contract proceeds in the hands of the Bank by reason of income taxes owed by Cisco. Trial was had to the court and a judgment was entered in favor of the Bank and a determination made that the action was not within the purview of 1655. The default judgments against Cisco and National City were thereafter set aside. The trial court also decreed that the intervenor had a prior lien for taxes upon the contract proceeds. This appeal by Morrison followed.
 
 
 2
 Actually, we find little conflict in the evidence adduced at the trial. Early in 1962, the United States Department of Agriculture through the Forest Service advertised for bids on a contract providing for the aerial spraying of timber land in Montana. Cisco Aircraft, Inc., became a prospective bidder. Mr. Monroe, President of Cisco, contacted appellant about furnishing gas, oil and some of the chase aircraft necessary in the performance of the contract. On April 23, 1962, Cisco and the government entered into a contract for the spraying work. A short time later Cisco and Morrison reached an oral understanding about Morrison's participation in the contract and on May 15 the parties evidenced the oral understanding by a written agreement. Prior to this date, Mrs. Herrin, President of Morrison, had knowledge that Cisco either had assigned or would assign the proceeds of the contract to the Deming National Bank and that the Bank would finance Cisco on the project. On May 9, she wrote the Bank concerning possible arrangements whereby the Bank would pay Morrison when it completed its part of the contract[2] and the Bank did not reply to that letter until June 11.[3] On May 21 Cisco had executed a written absolute assignment of the proceeds of the contract to the Bank. Performance of the contract was not commenced until June 21 and was completed July 24. On that date and after completion,Cisco's President, Mr. Monroe, a representative of the government and Mrs. Herrin met in her office in Helena, Montana, and agreed in writing as to the amount due Morrison and addressed such writing to the Bank and it was mailed. Mrs. Herrin later discovered an additional item of $464.81 and so advised the Bank. Various conferences and communications between Morrison and the Bank followed but the Bank did not receive the contract proceeds until December 24. Prior to this date, Cisco authorized in writing payment by the Bank of a bond premium in the amount of $3,168.75 and attempted to assign the remainder of the contract proceeds not then received by the Bank to National City Aircraft Leasing Co.
 
 
 3
 In our prior opinion in this case we concluded that the June 11 letter from the Bank to Mr. Morrison constituted a promise by the Bank to pay Morrison out of the contract proceeds for its part in performing the contract. We had some question about consideration to support the promise. The case then stood on appeal only upon the propriety of the order granting a summary judgment in favor of the Bank and an evidentiary hearing had not been held. Although counsel now interprets our former opinion as holding that there was no consideration for the promise, we did not make a final determination of that question because the evidence on the question was not then before us. We now have all the evidence on behalf of both Morrison and the Bank in the record and we must conclude from a legal standpoint that Morrison's performance of the contract constituted a good and sufficient consideration to support the promise to pay.
 
 
 4
 The law is well settled that performance of a pre-existing duty owed by the promisee to the promisor is not a sufficient consideration. But, that is not our situation here. The contract to be performed was between Morrison and Cisco and the promise here is by a third party, the Bank, to Morrison. The performance of the contract was certainly beneficial to the Bank and Morrison suffered a detriment in going forward with performance rather than refusing to perform because of the questionable financial condition of Cisco or seeking other and extraordinary means of insuring payment prior to performance.
 
 
 5
 Without dispute, the record shows that Mrs. Herrin, President of Morrison, testified that if she had not received the June 11 letter from the Bank, she would have requested the Forest Service to pay Morrison's share of the contract proceeds direct to her instead of to Cisco. She also testified, without contradiction, that the Forest Service had acceded to such a request on the part of another subcontractor during the performance of this same contract.
 
 
 6
 We recognize that there is a conflict among the authorities as to whether there is a sufficient consideration for a promise by a third person made to induce a party to an existing contract to perform. Professor Corbin recognizes this conflict and his comment about it has the approval of this court.[5] We believe not only that the trend of recent decisions but the 'weight of authority' now compels us to follow the rule enunciated by the American Law Institute in Restatement, Contracts, 84, 'Consideration is not insufficient because of the fact * * * (d) that the party giving the consideration is then bound by a contractual or quasi-contractual duty to a third person to perform the act in furtherance given or promised as consideration.'
 
 
 7
 Professor Corbin quotes this section of the Restatement with approval and makes the following comment:
 
 
 8
 'This should be supported for two reasons: (1) The promisor gets the exact consideration for which he bargains, one to which he previously had no right and one that he might never have received; (2) there are no sound reasons of social policy for not applying in this case the ordinary rules as to sufficiency of consideration. The performance is bargained for , it is beneficial to the promisor, the promisee has forborne to seek a rescission or discharge from the third person to whom the duty was owed, and there is almost never any probability that the promisee has been in position to use or has in fact used any economic coercion to induce the making of the promise. There is now a strong tendency for the courts to support these statements and to enforce the promise. The reasons that may be advanced to support the rule that is applied in the two-party cases, weak enough as they often are in those cases, are scarcely applicable to all in three-party cases.' Corbin, Contracts, 176.
 
 
 9
 In its Second Amended Complaint Morrison sought to impress a lien upon the contract proceeds in the hands of the Bank and we have no difficulty with this point here. The facts of this case fit perfectly with the recognized principle of equitable liens. That term has been defined as a right, not existing at law, to have specific property applied in whole or in part to the payment of a particular debt or class of debts. 'Such a lien may be created by express contract which shows an intention to charge some particular property with a debt or obligation, or it may arise by implication from the relations and dealings of the parties whose interests are involved.'[6] Without any doubt, the two letters exchanged between Morrison and the Bank constituted an express agreement that the Bank would pay Morrison for the performance of the contract out of the contract proceeds to be received by the Bank from the Forest Service. At a time no later than upon receipt of these proceeds by the Bank an equitable lien attached to such contract proceeds.
 
 
 10
 The next issue to be determined is the validity of the trial court's determination that 28 U.S.C. 1655[7] was not applicable. Basically section 1655 is a venue provision allowing suits to be brought in rem to enforce a lien or claim on or remove any encumbrance or lien or cloud upon the title to real or personal property within the district where the suit is brought. Initially the allegations in the complaint must be examined to determine whether section 1655 is applicable. From these allegations must be extracted the legal theory of the plaintiff's cause of action to determine whether it is a proceeding in rem to enforce a lien or claim upon real or personal property. If coverage exists from these allegations it is clear that jurisdiction obtained over non-resident parties pursuant to the provisions of 1655 continues even though it subsequently develops that the plaintiff's allegations and claims were non-meritorious. Shuford v. Anderson, 10 Cir., 352 F.2d 755; Cf. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939. Significantly in the instant case if appellant's Amended Complaint alleged a cause of action which fit within 1655 giving jurisdiction over the non-resident defendants, Cisco and National City Aircraft Leasing Co. then the default judgment entered against these defendants must stand.
 
 
 11
 The district court based its determination of lack of coverage under 1655 on the finding that no antecedent lien existed. Appellant argues that this represents too narrow a construction of section 1655 in that it covers not only 'liens' but 'claims made against property.' While this is certainly true it is doubtful that the district court's statement should be interpreted so narrowly. The term 'antecedent lien' was undoubtedly used by the district court to include equitable liens and claims as well as contractual or statutory liens.
 
 
 12
 Appellant argues that two separate bases exist for applying section 1655. First, the action is to enforce a constructive trust on a fund with a situs in New Mexico and the Tenth Circuit Case of Shuford v. Anderson, 10 Cir., 352 F.2d 755, established the proposition that an action to establish a constructive trust on a specific piece of property comes within section 1655. Two arguments are raised by appellee, Deming National Bank, to distinguish Shuford v. Anderson. First, it contends that the Amended Complaint did not sufficiently allege a constructive trust. This issue was, however, decided by this court on the prior appeal wherein it was stated 'Morrison may be able to prove a case under some legal theory other than guaranty. Its proposed theories of promissory estoppel and constructive trust are sufficiently alleged in the complaint and they, or some other legal or equitable theory, may find factual support from evidence available * * *.' Morrison Flying Service v. Deming National Bank, 10 Cir., 340 F.2d 430 at 432. Appellee's second argument also fails. It rightfully claims that the Shuford case recognizes the requirement that 'the proceeding must be in aid of some pre-existing claim, existing prior to the suit in question and not a proceeding to create for the first time a claim to property as the effect of the proceeding itself.' In the Shuford case the claim was deemed to be pre-existing because it was based upon an agreement between the plaintiff and defendant. In that case the plaintiff, Shuford, sued the defendant, Anderson, to have the defendant declared a constructive trustee of various property. The defendant had allegedly applied funds given him by Shuford in furtherance of a joint adventure agreement to the retiring of a second mortgage owing against certain real property. The agreement stipulated that 'each would have a share in the securities given to either or both of them by the corporation and co-partnership as a consideration for their investments.' Id. 352 F.2d at 758. This court stated, 'The complaint in this case, apart from any other theory presented by it, expressly alleges an agreement between Shuford and Anderson that each was to have a share in the property specifically described in the complaint. All of the other allegations in a sense orbit around this alleged agreement. Such an agreement, as sustained by the proof, would clearly create an interest in the land, subject to protection by a local action. The extent and the nature of the interest would depend upon other allegations or upon legal implications from the relationship of the parties, but the claim would be created by a pre-existing agreement and not merely by the adjudication of the court.' Shuford v. Anderson, supra, at 760-761.
 
 
 13
 In appellant's Amended Complaint it is alleged that appellee Deming National Bank has in its possession approximately $11,000.00 of the fund received from Cisco. Appellant further alleges that it has a prior claim to such funds because of appellee's promise to make payment therefrom. Included with the complaint are the documents, the assignment to Deming National Bank and the June 11th letter to Mrs. Herrin, containing the promise to pay from the funds to be collected from Cisco. We hold that this sufficiently alleges and establishes an equitable lien upon the fund held by Deming[8] to satisfy the requirements set forth in Shuford v. Anderson, supra, for an antecedent lien.
 
 
 14
 The second ground upon which appellant relies for the assertion that section 1655 applies to the instant situation is that the action is an attempt to nullify a fraudulent conveyance, i.e., the assignment to National City Aircraft Leasing Co., and apply a fund to a creditor's action. The Seventh Circuit in two recent cases, Huntress v. Huntress' Estate, 7 Cir., 235 F.2d 205, and Graff v. Nieberg, 7 Cir., 233 F.2d 860, concerning situations indistinguishable from the instant case, held that 1655 applied. As we found the first ground set forth by appellant to be sufficient to support his allegation that 1655 applied, a full discussion of his second ground is not required. We, therefore, believe that the trial judge erred in holding 1655 not applicable to appellant's causes of action. Since 1655 applied the court had jurisdiction to enter default judgment against Cisco and National City Aircraft Leasing Co. severing their Rights to the fund held by Deming National Bank.
 
 
 15
 The final question concerns the priority of the United States' tax liens. The government's arguments are based on the proposition that appellant was a general, unsecured creditor. As discussed above, however, we determine that appellant had a valid equitable lien upon the funds deposited in the Deming National Bank. Since this lien is based upon the contract for payment from the Bank, appellant qualifies as having a security interest as defined by26 U.S.C. 6323(h)(1).[9] Subsection (a) of 6323 states: 'The lien imposed by section 6321 shall not be valid as against any * * * holder of a security interest * * * until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.' It is undisputed that the earliest of the government's liens was not filed until 1963 which is after the latest date when appellant's security interest could be said to perfect, i.e., the depositing of the money in Deming National Bank on November 24, 1962. The government's contention that it should be awarded priority over appellant's claim to the fund held by Deming is therefore without merit.
 
 
 16
 The judgment appealed from is reversed and the case is remanded with directions to reinstate the default judgments entered against Cisco Aircraft, Inc., and National City Aircraft Leasing Company, and to enter a judgment in favor of appellant and against appellee Bank, in the amount of appellant's claim, including interest from December 24, 1962, and further adjudging that appellant has a prior equitable lien upon the contract proceeds held by the Bank, the same to be applied to the satisfaction of appellant's judgment against appellee Bank.
 
 
 
 [1]
 Morrison Flying Service v. Deming National Bank, 10 Cir., 340 F.2d 430
 
 
 [2]
 'Morrison Flying Service, Helena, Montana, 'Morrison Flying Service, Helena, Montana,
 May 9, 1962
 'Deming National Bank,
 Deming, N.M.
 'Dear Sir:
 'It is our understanding that the Forest Service Contract for spraying the forests for spruce bud-worms has been assigned to your bank. We are sub-contractors under Cisco Aircraft, furnishing gas & oil as well as 5-8 Cessna 180 aircraft to be used as chase planes. The flying contract will probably be in the $6,000-$9,000 bracket and we are wondering if your bank could send us a letter assuring us of payment for our services.
 'Under our contract with Cisco, they have agreed to pay us within 48 hours of their payment of this Forest Service contract. Is this agreeable with your bank?
 Yours very truly, E. Morrison Herrin, President'
 EMH/eh
 
 
 [3]
 'Deming National Bank
 
 
 [122]
 East Pine St., P.O. Box 511
 Deming, New Mexico
 D. A. Sovell
 President
 June 11, 1962
 'Mr. E. Morrison Herrin, President
 Morrison Flying Service
 Helena, Montana
 'Dear Mr. Herrin:
 'In regard to your inquiry on the Forest Service contract between U.S. Forest Service and Cisco Aircraft. This contract has been assigned to the Deming National Bank and we are to act as paying agents for all the obligations assumed under this contract.
 'I can assure you that once the money is received from the Forest Service, we will pay all the bills submitted, without delay.
 Yours very truly, D. J. Sovell'
 DJS:mjb
 
 
 [4]
 17 Am.Jur.2d, Contracts, 123 and footnote 13
 
 
 [5]
 Corbin, Contracts, 176, states:
 'If an actual count of cases is made, from the earlier centuries down to date, the greater number have been decided against the promisee. The performance of his duty to a third person was held not to be a sufficient consideration. Nevertheless, this should not now be called the 'weight of authority.' To the numerous cases to the contrary, holding such performance a sufficient consideration, must be added much critical juristic opinion, the Restatement by the American Law Institute, and the fact that many recent decisions are on this side. In spite of past decisions, no state or federal court need hesitate to give judgment against the promisor if the 'merits of the case' seem to require it.'
 
 
 [6]
 Am.Jur., Liens, 18, and see cases cited in footnote 8, infra
 
 
 [7]
 28 U.S.C. 1655 states:
 'In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.
 'Such order shall be served on the absent defendant personally, if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.
 'If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant, without appearance, effect only the property which is the subject of the action. When a part of the property is within another district, but within the same state, such action may be brought in either district.
 'Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to plead on payment of such costs as the court deems just.'
 
 
 [8]
 See Caldwell v. Armstrong, 10 Cir., 342 F.2d 485; Porter v. Searle, 10 Cir., 228 F.2d 748; and Union Trust Co. of Maryland v. Townshend, 4 Cir., 101 F.2d 903
 
 
 [9]
 26 U.S.C. 6323(h)(1) states: 'Security interest.-- The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.'