**GENERAL INTERMODAL LOGISTICS CORPORATION, a corporation, d/b/a Gilco Marine Transport Services, Plaintiff-Appellant,**

v.

**MAINSTREAM SHIPYARDS & SUPPLY, INC., a corporation, Defendant-Appellee.**

No. 83–4395.

United States Court of Appeals, Fifth Circuit.

Dec. 21, 1984.

---

Lake, Tindall, Hunger & Thackston, Greenville, Miss., Goldstein & Price, Hubert I. Binowitz, St. Louis, Mo., for plaintiff-appellant.

W. Scott Welch, III, Rhesa H. Barksdale, Jackson, Miss., for defendant-appellee.

Before WISDOM, RANDALL and JOLLY, Circuit Judges.

PER CURIAM:

Several years ago General Intermodal Logistics Corp. (Gilco), now the appellant, brought suit against Mainstream Shipyards & Supply, Inc. (Mainstream), alleging that Mainstream negligently repaired a towboat owned by Gilco. In the first trial the district court, sitting without jury, found Mainstream liable for negligent repair and entered judgment for Gilco for $79,444.38. 502 F.Supp. 38. Mainstream appealed and this court affirmed the district court's findings of fact, but vacated and remanded the portion of the judgment concerning damages. 666 F.2d 129. The district court was directed to consider whether a release entered into between Mainstream and General Marine Towing Company (GMT), Gilco's predecessor in interest, barred the action. On remand, the district court found that the release was supported by sufficient consideration and held that it barred recovery. Gilco appeals. We hold that there was no consideration to support the release. We remand and direct the district court to enter judgment for Gilco and make a determination of damages consistent with our prior opinion.

I.

As noted, this case is before us for the second time. The underlying facts have been fully developed in the district court's initial opinion, 502 F.Supp. 38, and in our earlier opinion, 666 F.2d 129. To promote a clear understanding of the case, however, we need to restate the facts leading up to the district court's judgment on remand, which is the subject of this appeal.

The defendant, Mainstream, which operated a shipyard for the repair of commercial towboats, entered a contract on June 13, 1974, with GMT to repair and refurbish the M/V JANE T, a vessel wholly owned by GMT. GMT was a Mississippi corporation, with offices in Greenville, Mississippi, formed for the purpose of operating a marine transportation business. The plaintiff, Gilco, owned fifty percent of the shares of stock of GMT and James Nowell and Emery Skelton, both Greenville residents, each owned twenty-five percent of the stock.

Before entering the GMT contract, Mainstream had offered essentially the same contract to Gilco. Because of arrange-

ments between Gilco and GMT, however, the written contract was entered into by and between Mainstream and GMT. Charles R. Glenn, Vice President of Gilco, signed the contract on behalf of GMT. The contract provided that Mainstream would install two engines in the towboat and modify the bases to suit the new engines and reduction gears. In addition, Mainstream agreed to furnish and install two main engine lubricating-oil priming pumps, two new intermediate shafts with bearings, and reduction gear oil coolers, filters and relief valves.

Upon completion of the work in November 1974, Mainstream invited Skelton, then Vice President of GMT, to accompany its personnel on a sea trial of the M/V JANE T. Skelton complained about a vibration which Mainstream adjusted to the satisfaction of all parties. Ten days before completion of the work, however, Mainstream's president, Joe Williams, learned that title to the towboat had been transferred to Gilco and would be operated by Gilco instead of GMT. Williams stated that because of this development, he prepared a document entitled Acceptance and Release, which he wanted signed by Gilco before the vessel would be delivered. The document provided "[t]hat for and in consideration of the delivery of the M/V JANE T pursuant to the terms of the contract ... the Buyer does hereby ... release ... Seller ... from any and all rights, claims, liens, remedies or causes of action of whatever nature for all damages arising from the failure, if any, of Seller to comply with the terms of said contract." The document was presented to Skelton on December 9, 1974, and he signed it on the same day. The release recited that he executed it "after having first obtained the authority from General Marine Towing Company, Inc., and Gilco Marine Transport." Gilco does not contest that Skelton properly read the document before signing it or that he had authority to sign on behalf of Gilco. Upon executing the release, Mainstream delivered the M/V JANE T to Gilco.

After delivery by Mainstream, the JANE T, which was renamed the JANE ELIZA-BETH, was, for lack of business, moored in Lake Ferguson near Greenville until mid-May 1975. After being moved to Memphis, Tennessee, for more economical fleeting, the JANE ELIZABETH proceeded up the Mississippi River to Cattlesburg, Kentucky, to fulfill a towing contract. During this run the vessel encountered problems, including excessive vibration and instances of the governor prematurely shutting off the engine. As a result of these difficulties, Gilco contacted National Marine Service, the company that provided and installed the engines at Mainstream's shipyard. Repairmen from National Marine attended the vessel and found that oil filter elements were not installed in the cannisters and that welding slag, which normally would have been absorbed by the oil filter elements, had been allowed to remain in the engines' systems.

Following repair by National Marine, the vessel proceeded up the Ohio River where it continued to experience engine problems. The towboat was then drydocked near Portsmouth, Ohio, and checked by B & Q Marine and Repair, Inc. of Point Pleasant, West Virginia. The B & Q repairmen discovered original errors in alignment between the tail and intermediate shafts, and as a result realignment work was performed by that company. Additionally, at Gilco's request National Marine dispatched its service engineer to the drydock site who discovered that all bearings and various other elements of the engines were in need of replacement or repair.

Because of these problems, Gilco filed suit in the Northern District of Mississippi against Mainstream for damages resulting from the negligent repair of the M/V JANE T. The district court, sitting without a jury, found that the absence of oil filter elements and the presence of welding slag in the lubricating oil system contributed to the damage to the vessel's engines. 502 F.Supp. at 41. The court found that Mainstream was obligated to install oil filter elements in the engines and remove welding slag and that it negligently failed to do so. *Id.* The district court further

found that Mainstream negligently failed to align intermediate and tail shafts with the engines, which caused excessive vibration during normal operations. *Id.* The district court determined that the repair costs paid to National Marine and B & Q to repair the vessel were a direct and proximate result of Mainstream's negligence and that a disclaimer of warranty in the contract did not serve to bar Gilco's action. *Id.* at 41–42.

Mainstream appealed that judgment to this court. 666 F.2d 129. Although recognizing that the evidence was in sharp dispute, we refused to overturn the district court's finding as clearly erroneous. *Id.* at 132. We noted, however, that the district court did not consider the effect of the release in its conclusions of law, although it was briefly mentioned in its findings of fact. *Id.* at 133. We affirmed the district court's findings of fact, but because it was not apparent whether the district court properly considered the effect of the release, we vacated the portion of the judgment that awarded damages and remanded for a determination whether the release barred recovery and "to determine the measure of damages as may be appropriate." *Id.*

On remand to the district court, another district judge presided because of the death of the former judge. The district court, unable to make adequate findings of fact concerning the validity of the release based upon the record, ordered further proceedings. After an evidentiary hearing, the district court made further findings of fact and concluded that there was sufficient consideration for the release between Mainstream and Gilco. Further, the court held that the release applied to negligence actions. Concluding that the release barred Gilco's negligence action, the court entered judgment for Mainstream. The district court thus found it unnecessary to redetermine the amount of damages as directed by our former panel. This appeal followed.

## II.

The dispositive issue in this appeal is whether sufficient consideration supports the Acceptance and Release. We hold that because there was no consideration, the release is of no force or effect. The basis for our holding is that Mainstream had a preexisting contractual duty to deliver the vessel to GMT or its successor in interest, and that it had no right to select who might operate the vessel after it left the shipyard absent a contractual provision to the contrary. Because there was no consideration to support the release, it is not necessary to decide whether the release bars actions for negligence or whether the district court erred in considering parol evidence in determining the existence *vel non* of consideration.

## III.

On remand, the district court reiterated the general rule that a promisor's agreement to fulfill an existing legal obligation is not sufficient consideration to support a contract. The district court, however, relying on *Morrison Flying Service v. Deming National Bank*, 404 F.2d 856 (10th Cir. 1968), *cert. denied*, 393 U.S. 1020, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969), held that a promise to a third person to perform a preexisting contractual duty can constitute consideration if the duty is not owed to the third person. The court, finding that Mainstream was obligated to repower the JANE T for GMT, not Gilco, held that Gilco was a third party to the repowering contract within the rule of *Morrison.* Concluding that Mainstream did not owe a duty to Gilco, the court found that Gilco obtained the additional benefit of receiving the vessel upon completion of the work without dispute from Mainstream concerning the original contract with GMT. This additional benefit to Gilco that the district court found was deemed sufficient consideration to validate the release. Accordingly, the district court dismissed Gilco's suit, finding that the release barred all claims against Mainstream.

■ Gilco contends on this appeal that Mainstream, through its contract to GMT, was under a preexisting agreement to de-

liver the vessel to Gilco as successor in interest to GMT. Gilco argues that because Mainstream was already obliged to make delivery, no consideration flowed from the repetition of the promise to deliver the vessel. Gilco further argues that the Tenth Circuit's decision in *Morrison* is inapplicable on its facts to the instant case. We agree with Gilco's contentions.

This case involves an admiralty and maritime claim and, as such, federal law controls the disposition of the appeal. It is a well-established principle of federal law that a promise to perform a preexisting duty is not sufficient consideration and is grounds for setting aside a release. *Maynard v. Durham & Southern Railway Co.*, 365 U.S. 160, 164, 81 S.Ct. 561, 563, 5 L.Ed.2d 486 (1961). The courts of appeals, including the Fifth Circuit, have consistently applied this basic principle of contract law in a variety of federal law contexts. *See, e.g., Salmeron v. United States*, 724 F.2d 1357, 1362 (9th Cir.1983) (FTCA claim); *Holcomb v. United States*, 622 F.2d 937, 941 (7th Cir.1980) (taxpayer suit); *In re Lloyd, Carr and Co.*, 617 F.2d 882, 890 (1st Cir.1980) (bankruptcy); *Masonite Corp. v. Norfolk & Western Railway Co.*, 601 F.2d 724, 727 (4th Cir.1979) (Interstate Commerce Act); *Isthmian Lines, Inc. v. Haire*, 334 F.2d 521, 523 (5th Cir.1964) (Jones Act); *see also Kress v. Long Island Rail Road*, 526 F.Supp. 856, 858 (S.D.N.Y. 1981) (FELA). Indeed, the "majority of courts have taken the traditional and rigorously logical view" that a promisor's mere performance of his legal obligation is not sufficient consideration to support a contract, thereby nullifying the agreement. Calamari & Perillo, *Contracts* 149 (2d ed. 1977); *see, e.g., Hoffa v. Fitzsimmons*, 673 F.2d 1345, 1359 (D.C.Cir.1982) (applying Michigan law); *In re Windle*, 653 F.2d 328, 331 (8th Cir.1981) (applying Missouri law).

Mainstream acknowledges the general rule that performance of a preexisting duty is not consideration for a contract, but ar-

gues that the rule does not apply to third parties. It contends that Gilco was a third party to the original repowering contract. The district court, applying *Morrison*, accepted this argument, concluding that Mainstream was obligated to repower the JANE T only for GMT; therefore Gilco, being a third party to the contract, obtained the additional benefit of receiving the vessel from Mainstream without dispute. We respectfully disagree with the district court's reasoning.

We believe that the Tenth Circuit's decision in *Morrison* is inapplicable on its facts to the instant case. In *Morrison*, Cisco Aircraft, an aerial spraying service, entered a contract with the United States Forest Service to spray certain timberland. Cisco then contracted with Morrison to furnish gas, oil, and some of the chase aircraft necessary to perform the contract. After entering the contract, Morrison became aware that Cisco had assigned or would assign the proceeds of the spraying contract to Deming National Bank (bank). 404 F.2d at 859. Morrison, concerned about not receiving payment upon the completion of its portion of the contract, inquired of the bank whether it would pay Morrison from the assigned proceeds. *Id.* at 859–60. The bank promised to pay but failed to do so. Morrison sued the bank, but the district court held that there was no consideration for the bank's promise and dismissed the complaint. *Id.* at 860.[1]

On appeal, the issue was whether Morrison's performance of the contract constituted good and sufficient consideration for the bank's promise to pay. Holding that performance was sufficient consideration, the court reasoned that the bank was a third party to the contract and that performance of the contract was a benefit to the bank; that is, Morrison's performance assured the continued performance by Cisco which assured continued payment to the bank. Furthermore, Morrison suffered a detriment in going forward with performance

---

**1.** Our recitation of the facts in *Morrison* is partially derived from the Tenth Circuit's first opinion in that case. *See Morrison Flying Service v.* *Deming National Bank,* 340 F.2d 430 (10th Cir. 1965).

rather than refusing to perform or seeking other means of insuring payment prior to performance in view of the questionable financial condition of Cisco. The president of Morrison had testified that if she had not received assurance from the bank that payment would be forthcoming, she would have requested the Forest Service to pay Morrison's share of the proceeds directly to it instead of Cisco. *Id.*

Following the view of Professor Corbin and the American Law Institute, the *Morrison* court concluded that the consideration was not insufficient merely because Morrison was bound by a contractual duty to Cisco. The court adopted the reason given by Professor Corbin for this view: the bank received the exact consideration for which it bargained, one to which it previously had no right and one that it might never have received. *Id.* at 861. Relying upon this principle, Mainstream argues that the consideration it gave to Gilco is not insufficient merely because it was bound by a contractual duty to GMT. Gilco, it argues, received exactly what it bargained for: performance under the original contract, which it previously had no right to receive.

The *Morrison* case, however, is distinguishable from our case on two primary bases. First, Gilco simply was not, in the *Morrison* sense, a "third party" in the contract dealings between Mainstream and GMT. Although the original contract to repower the JANE T was signed by GMT, Gilco was involved in the project from its inception. Mainstream's first written proposal was to Gilco. After receiving the proposal, Gilco advised Mainstream in writing that it accepted the proposal and requested that certain agreed changes be incorporated into the formal contract. Although GMT was substituted as the party to the final contract, it was Gilco that executed the agreement on behalf of GMT. Gilco owned fifty percent of GMT, its personnel supervised the work on the JANE T as it progressed, and it made all payments to Mainstream for repair of the vessel. In addition, title to the JANE T was transferred from GMT to Gilco before the repower-

ing work was completed, and Mainstream did not perform any work as a result of the release agreement beyond what it was otherwise obligated to perform. In short, the facts here do not create the exceptional third-party situation that *Morrison* addresses.

Aside from the factual context here in which Gilco simply was not a third party for the purposes of invoking the *Morrison* rule, we find that our case here is distinguishable from *Morrison* on a second basis. The underlying reason for the Tenth Circuit's holding in *Morrison* is that the third party received consideration to which it previously had no right and might otherwise never have received. In this case, however, Gilco did not receive consideration to which it previously had no right. Irrespective of Gilco's status as a third party, as the successor in interest to GMT, it had the absolute right to receive the M/V JANE T according to the terms of the original contract when the repowering work was complete. The original contract was silent concerning the operator of the vessel after delivery. Absent an express contractual provision to the contrary, Mainstream certainly could not control the operation of the vessel after it left its shipyard. Gilco, as the successor in interest of the JANE T, had a preexisting right to receive the vessel according to the terms of the original contract which is all that Mainstream promised to secure the release. Mainstream's obligation to deliver the vessel to Gilco was not doubtful or subject to honest and reasonable dispute. *See In re Windle,* 653 F.2d 328, 331 (8th Cir.1981); *In re Lloyd, Carr and Co.,* 617 F.2d 883, 890 (1st Cir.1980). It had no legal right to prevent a change of operators of the JANE T and no right to rescind the original agreement on that basis. Since Mainstream could not have legally rescinded the contract on the basis of a change of operators, its forbearance in so doing could not have constituted sufficient consideration to support the release. *See Salmeron v. United States,* 724 F.2d 1357, 1363 (9th Cir.1983). There clearly was no considera-

tion flowing from Mainstream to Gilco other than that to which it was already entitled. There being no consideration, the release is a nullity and therefore Gilco's original negligence action is not barred.

## IV.

In our former panel opinion, we affirmed the district court's findings of fact concerning liability. 666 F.2d at 132. We vacated that portion of the judgment that awarded damages against Mainstream, however, and remanded for consideration of whether the release barred Gilco's action. Since we have now determined that the release did not bar Gilco's action, in keeping with our prior opinion, we reinstate the district court's original finding of liability on the part of Mainstream.

██ We expressly note that our prior opinion did not find the assessment of damages by the first trial court to be clearly erroneous, but rather expressed concern that mitigation of damages by Gilco had not been considered. Therefore we remanded for reconsideration of damages if the district court determined that the release did not bar the action. *Id.* at 133. Since the district court on remand did not reach the damage question, we must again remand for that determination. Because Gilco has already proved damages, however, we make clear that it should not be required to prove them again. We hold only that the district court should consider whether Gilco failed to mitigate its damages and, if so, to what extent and amount.[2] We do not foreclose the possibility of a finding on remand that the district court was correct in its original assessment of damages.

In summary, we hold that the release is of no force or effect because it was not supported by sufficient consideration. We therefore reinstate that part of the original district court's opinion that finds liability against Mainstream. We remand to the district court for a determination of damages not inconsistent with this, or our former, opinion.

REVERSED AND REMANDED.

---

**2.** Mainstream also seeks to invoke the doctrine of promissory estoppel to prevent the imposition of liability against it in the event there is no consideration to support the Release. It argues that it detrimentally relied upon Gilco's promise not to pursue claims against it, and because of this reliance, it did not respond to Gilco's request for assistance when problems with the M/V JANE T arose. Mainstream contends that its inaction in reliance upon Gilco's promise caused the damage to the JANE T, therefore Gilco should be estopped from recovering on its

claim. This contention is wholly without merit. Assuming that Mainstream did detrimentally rely upon Gilco's promise not to pursue claims, the reliance did not initially cause the damage to the JANE T. Damage to the vessel had already occurred when Gilco made its request for assistance from Mainstream. Any damage that may have occurred because of Mainstream's reliance upon Gilco's representations merely concerns the question of mitigation of damages, which the district court has been directed to consider on remand.