**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 23, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 03-31005, 03-31038 and 03-31161

———————————

DONALD J. JOHNSON,
            Plaintiff

v.

SEACOR MARINE CORP., ET AL.,
            Defendants

SEACOR MARINE CORP.,
            Defendant-Third-Party Plaintiff-
            Appellee

v.

GRAY INSURANCE CO., ET AL.,
            Third-Party Defendant

GRAY INSURANCE CO.,
                    Third-Party Defendant-
                    Appellant.

Consolidated with
03-31038

DONALD FLEMING,
                    Plaintiff

v.

GRAND ISLE SHIPYARD, INC., ET AL.,
                    Defendants

SEACOR MARINE, INC.,
                    Defendant-Third-Party
            Plaintiff-Appellant

v.

-1-

GRAY INSURANCE CO.; PRODUCTION MANAGEMENT INDUSTRIES, L.L.C.,
                              Third-Party Defendants-
                              Appellees

                         Consolidated with
                              03-31161

                         GERALD W.HOFFPAUIR,
                                   Plaintiff

          PRODUCTION MANAGEMENT INDUSTRIES, L.L.C.;
                  GRAY INSURANCE CO.,
                              Intervenor Plaintiffs-
                              Counterdefendants-Appellees

                              v.

                  SEACOR MARINE, INC.,
                              Defendant-Intervenor
                              Defendant-Counterclaimant-
                              Appellant.

                    _____

       Appeals consolidated from the United States District Courts
           for the Eastern and Western Districts of Louisiana
                    _____

Before KING, Chief Judge, HIGGINBOTHAM, and DAVIS, Circuit
Judges.

W. EUGENE DAVIS, Circuit Judge:

    This consolidated appeal presents the question of whether a

labor contractor's contract to hold harmless and indemnify a

vessel operator for injuries, sustained by that contractor's

employees while riding on the operator's vessel, is supported by

consideration when the vessel operator owes a pre-existing duty

to an oil company to transport those same employees. We conclude

that the contract is supported by consideration and is

enforceable.

## I.

Production Management Industries, L.L.C. (PMI), a labor contractor that provides labor and other support services for the oil and gas industry in the Gulf of Mexico off the Louisiana coast, entered into contracts with various oil companies to provide workers for the oil companies' rigs. Chevron U.S.A., Inc. (Chevron) and Matrix Oil and Gas Co. (Matrix) - neither of which is a party to this appeal - are the two oil companies that contracted with PMI in the instant cases. As part of their agreements with PMI, Chevron and Matrix contracted to provide transportation for PMI workers from the shore to the rig. The oil companies contracted with SEACOR Marine Inc. (SEACOR), a company that owns and operates vessels used in oilfield operations on the Louisiana OCS to deliver equipment, supplies and personnel (including PMI employees) to the rigs.

On December 20, 1990, Chevron and SEACOR signed a "blanket time-charter agreement". This agreement, subject to unilateral cancellation by either party, set the general terms that would apply to future vessel charters. The blanket agreement created no obligation on the part of either party to enter into a charter for a vessel. On October 7, 1999, Chevron entered into a time-charter of the SEACOR vessel the Sylvia F; this Time Charter incorporated the terms of the December 20 Blanket Agreement. On

April 24, 1997, SEACOR entered into a blanket time-charter agreement with Energy Logistics, Inc. (ELI). On June 3, 2000, ELI chartered the SEACOR vessel, the Shirley G and incorporated the terms of the April 24 Blanket Agreement. ELI subchartered the Shirley G to Gulftran, Inc. (Gulftran) on December 14, 2000. The next day, Gulftran subchartered the vessel to Matrix. Therefore, unlike Chevron, Matrix never directly contracted with SEACOR.

SEACOR, knowing that its obligations under the charter agreements with the oil companies would probably involve transporting PMI employees, contacted PMI directly and insisted that it would not transport any PMI employees until PMI signed a "Vessel Boarding and Utlization Agreement Hold Harmless" (VBA). By the VBA's terms, the provisions of this form contract apply when a SEACOR vessel transports a contractors' employees. The VBA stated that, in exchange for PMI employees being ferried on SEACOR vessels, PMI would name SEACOR as an additional insured under PMI's comprehensive general liability (CGL) policy with waiver of subrogation rights and deletion of the CGL watercraft exclusion[1]. After some deliberation, PMI signed the VBA on July

---

[1]The CGL Watercraft Exclusion, which appears on page 2 of 11 of the Gray Insurance Company commercial general liability policy coverage form, reads as follows:

"g. 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and

17, 1999.

On December 15, 2000, Plaintiffs Johnson and Hoffpauir were injured while transferring between Matrix operated platforms and the Shirley G. Plaintiff Fleming was injured while transferring from a Chevron platform to the Sylvia F on February 1, 2001.

The three injured PMI employees brought separate suits against SEACOR. In all three cases, SEACOR filed third-party complaints against both PMI and Gray Insurance Co. (Gray), PMI's CGL insurer, seeking defense and indemnity based on the VBA. Each

unloading'.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:
(a) Less than 26 feet long; and
(b) Not being used to carry persons or property for a charge;

(3) Parking an 'auto' on, or on the ways next to, premises you own or rent, provided the 'auto' is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any 'insured contract' for the ownership, maintenance or use of aircraft or watercraft; or

(5) 'Bodily injury' or 'property damage' arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of 'mobile equipment'(SECTION V.8.)."

of the three plaintiffs eventually settled against the direct defendants and trials went forward on SEACOR's third-party claims against PMI and Gray.

As PMI's insurance carrier for the time relevant to these cases, Gray routinely furnished insurance certificates reflecting the nature and extent of PMI's insurance coverage to PMI's contractors. Gray, at PMI's request, sent an insurance certificate to SEACOR. At the time PMI asked Gray to send SEACOR an insurance certificate, Gray was unaware of the existence and contents of the VBA.

The individual suits filed by Plaintiffs Johnson, Hoffapauir, and Fleming were assigned to three different district judges. Motions for summary judgment were filed in all three cases seeking a resolution of whether the VBA was supported by adequate consideration and was enforceable. The district courts' decisions split on the issue of whether consideration supported the VBA. In Johnson v. SEACOR, Judge Haik found the agreement supported by consideration; in Hoffpauir v. SEACOR, Judge Doherty ruled that the VBA failed for lack of consideration. In Fleming v. Grand Isle Shipyard, the third case, Judge Lemelle did not reach the issue. We review a grant of summary judgment *de novo*, applying the same standards as the district court. Taita Chem. Co., Ltd. V. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir.

2001).

## II.

The most significant issue on appeal is whether SEACOR can enforce the VBA. Gray argues that the VBA is unsupported by consideration and unenforceable because SEACOR owed PMI a preexisting duty, under the SEACOR contract with the oil companies, to transport PMI employees to the oil platforms. Under the preexisting duty rule, a promise to do that which the promisor is already legally obligated to do is unenforceable[2]. According to Gray, SEACOR's blanket charter agreements[3] with the oil companies create a duty on SEACOR to transport PMI employees to the Matrix and Chevron platforms. Gray provided summary judgment evidence that PMI's employees would have received transportation from SEACOR even if the VBA was never signed and, indeed, continued to receive such transportation after PMI

---

[2]See JOSEPH M. PERILLO & HELEN H. BENDER, 2 CORBIN ON CONTRACTS § 7.1, at 342 (Revised Edition 1995). See also RICHARD A. LORD, 3 WILLINSTON ON CONTRACTS § 7.36, at 569 (4th ed. 1992)("As a general principle, when a party does simply what he has already obligated himself to do under a contract, he cannot demand any additional compensation or benefit, and, it is clear that if he takes advantage of the situation and obtains a promise for more, the law in general regards it as not binding as lacking consideration".); Restatement (Second) of Contracts § 73, comment c, illustration 4.

[3]I.e. the December 20, 1990 agreement between Chevron and SEACOR and the April 24, 1997 agreement between SEACOR and ELI, which through a series of subcharters reaches Matrix.

officially withdrew from the VBA.

All of the most influential treatises urge courts to avoid using the preexisting duty rule if even minimal consideration supports the contract. Indeed, Corbin strongly cautions courts against relying on this rule in formulating their decisions.

> A court should no longer accept this rule as fully established. It should never use it as the major premise of a decision, at least without giving careful thought to the circumstances of the particular case, to the moral desserts of the parties, and to the social feelings and interests that are involved.

JOSEPH M. PERILLO & HELEN H. BENDER, 2 CORBIN ON CONTRACTS § 7.1, at 342 (Revised Edition 1995). It is well accepted that the mere exchange of promises is ordinarily sufficient to satisfy the requirement of consideration. CLAUDE D. ROHWER & ANTHONY M. SKROCKI, CONTRACTS IN A NUTSHELL § 2.24, at 131 (5th ed. 2000)("If there is any legal detriment incurred by the promisee that can be viewed as a bargained exchange for the promisor's promise, that is sufficient. In addressing the existence or non-existence of consideration, courts have not concerned themselves with the adequacy of fairness of the consideration but only with finding the presence of some legal detriment incurred as part of a bargain.")

Thus, even if a contract does not require any performance that would not have been done in the absence of the contract, as long as the contracting parties gain some legally enforceable

right as a result of the contract which they previously did not have, consideration is present. See Morrison Flying Service v. Deming National Bank, 404 F.2d 856, 861 (10th Cir. 1968). See also RESTATEMENT (SECOND) OF CONTRACTS § 73(d) (1981)("But the tendency of the law has been simply to hold that the performance of contractual duty can be consideration if the duty is not owed to the promisor.")

In Morrison Flying Service, the leading case on the subject of sufficiency of consideration, Cisco Aircraft, Inc. (Cisco) contracted with the U.S. Forest Service to provide aerial spraying of timber land in Montana. Cisco then contracted with Morrison Flying Service (Morrison)for the provision of gas, oil, and some of the chase aircraft necessary for the performance of the contract. Prior to beginning work on the contract, Cisco assigned all the proceeds of the contract to Deming National Bank (Deming) in exchange for Deming's financial support of the project. The president of Morrison, armed with knowledge of this assignment, wrote to Deming to ensure that Deming would pay Morrison when Morrison fulfilled its obligations under the contract with Cisco. Deming provided Morrison with written confirmation that, once the Forest Service paid the amount due Cisco, Deming would remit Morrison's share of the proceeds. Morrison then proceeded to perform its duties under the

subcontract with Cisco. The resolution of this case required the 10th Circuit to determine whether adequate consideration supported Deming's promise to Morrison. The court, relying on the Restatement and Corbin, held the contract enforceable. To support its holding, the court cited two reasons for finding that consideration supported Deming's promise:

  (1) The promisor gets the exact consideration for which he bargains, one to which he previously had no right and one that he might never have received;
  (2) there are no sound reasons of social policy for not applying in this case the ordinary rules as to sufficiency of consideration. The performance is bargained for, it is beneficial to the promisor, the promisee has forborne to seek a rescission or discharge from the third person to whom the duty was owed, and there is almost never any probability that the promisee has been in position to use or has in fact used any economic coercion to induce the making of the promise. There is now a strong tendency for the courts to support these statements and to enforce the promise.

Morrison Flying Service, 404 F.2d at 861, citing PERILLO, 2 CORBIN ON CONTRACTS § 176.

Gray argues that, instead of the "Morrison Rule" we should apply this Court's holding in General Intermodal Logistics Corp. v. Mainstream Shipyards & Supply, Inc., 748 F.2d 1071 (5th Cir. 1984) to the facts of this case.

In General Intermodal, General Marine Towing Co. (GMT) entered into a contract with the defendant, Mainstream Shipyards & Supply, Inc. (Mainstream) to repair and refurbish one of GMT's vessels. At the time GMT and Mainstream entered into this

-10-

contract, General Intermodal Logistics Corp. (Gilco) owned fifty percent of the stock of GMT. 10 days before Mainstream completed the work, Mainstream's president learned that GMT had transferred the vessel's title to Gilco and the vessel would be operated by Gilco, instead of GMT, in the future. Mainstream then refused to release the boat to Gilco until Gilco signed a document releasing Mainstream from all liability arising from the repair of the ship. Gilco signed the release. See General Intermodal, 748 F.2d at 1076. This Court, in holding the release unenforceable for lack of consideration, relied on the fact that "Mainstream had a preexisting contractual duty to deliver the vessel to GMT *or its successor in interest*, and that it had no right to select who might operate the vessel after it left the shipyard absent a contractual provision to the contrary". General Intermodal, 748 F.2d at 1074. This Court recognized the Morrison rule but agreed with Gilco that it was inapplicable to the facts of its case. Id. at 1075. The Court distinguished General Intermodal on the grounds that Gilco was not simply a third party, as Morrison was in Morrison Flying Service. Rather, Gilco had been involved in the project from its inception and, as GMT's direct successor-in-interest with respect to this particular vessel, was legally entitled to all rights under GMT's contract with Mainstream. We therefore read both Morrison and General Intermodal as supporting

-11-

SEACOR's argument that PMI's promise to SEACOR was adequate consideration to support the VBA.

In the cases before us, even if SEACOR owed a duty to Chevron and Matrix to transport PMI employees under SEACOR's agreements with those oil companies, SEACOR owed no legally enforceable duty to PMI to do so. If SEACOR chose to prevent PMI employees from boarding its vessels, only the oil companies had a remedy against SEACOR. With the creation of the VBA, however, PMI had a distinct, legally enforceable right to board SEACOR's vessels. This is sufficient consideration to form a contract.

For these reasons, we conclude that the VBA is supported by consideration and is a legally enforceable contract.

### III.

PMI argues next that the VBA's indemnity terms are not enforceable under the Louisiana Oilfield Anti-Indemnity Act. SEACOR argues that this Louisiana statute has no application to the VBA because it is a maritime contract. This issue was clearly resolved by this Court's opinion in <u>Laredo Offshore Constructors, Inc. V. Hunt Oil Co.</u>, 754 F.2d 1223, 1231 (5th Cir. 1985).

In <u>Laredo</u>, this Court held that "[a]n agreement to transport people and supplies in a vessel to and from a well site on navigable waters is clearly a maritime contract". <u>Laredo</u> at 1231, citing <u>Hale v. Co-Mar Offshore Corp.</u>, 588 F.Supp. 1212, 1215 (W.D.La. 1984). Because the agreements at issue in this case are

solely for the transportation of employees to and from the platforms, Laredo controls and we hold that the VBA is a maritime contract which renders the indemnification provisions valid. See Hollier v. Union Tex. Petroleum Corp., 972 F.2d 662, 664 (5th Cir. 1992).

IV.

Finally, we must decide whether Gray is contractually obligated to cover SEACOR's losses. For the reasons stated above, the VBA is valid and PMI is obligated to provide SEACOR with additional insured status on its CGL policy with Gray. Although the additional insured provision in Gray's policy is somewhat ambiguous, we assume for our purposes that Gray's policy did provide SEACOR with additional insured status. However, because the watercraft exclusion was not deleted as to SEACOR, the additional insured status is irrelevant to the three cases consolidated here. The watercraft exclusion plainly excludes coverage to SEACOR[4]. SEACOR argues further, however, that, even if the watercraft exclusion excludes coverage, Gray's insurance certificate misled SEACOR and Gray is liable to SEACOR under the theories of negligent misrepresentation and equitable estoppel. We conclude that SEACOR cannot prevail on either theory.

In order to prevail on a theory of negligent

---

[4]See above, note 2 for language of watercraft exclusion.

-13-

misrepresentation, a plaintiff must satisfy the following three elements: (1) a legal duty on the part of the defendant to supply correct information; (2) a breach of that duty; and (3) damages to the plaintiff as a result of justifiable reliance on the misrepresentation. Brown v. Forest Oil Corp., 29 F.3d 966, 969 (5th Cir. 1994).

SEACOR cannot satisfy the above test because it can demonstrate no misrepresentation. The certificate of insurance contained no incorrect information. Additionally, there is no evidence of SEACOR's detrimental reliance on the information provided by Gray. Indeed, the evidence in the record indicates that SEACOR did not review these insurance certificates. If SEACOR cannot demonstrate that it was aware of the contents of the certificate it certainly cannot demonstrate that it relied to its detriment on the certificate.

SEACOR's equitable estoppel claims similarly fail. The three elements of an equitable estoppel claim are: (1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance. Home Ins. Co. V. Matthews, 998 F.2d 305, 309 (5th Cir. 1993). For the reasons stated above, in our discussion of the negligent misrepresentation claim, SEACOR cannot demonstrate justifiable reliance on the insurance certificate. Additionally, as SEACOR transported PMI's employees after the VBA was revoked and also

-14-

transported employees of contractors who did not sign the VBA, SEACOR's argument is unpersuasive that it would have refused PMI employees access to its vessels if it had known that the insurance policy did not cover them.

## V.

For the reasons set forth above, in <u>Johnson v. SEACOR Marine Corp.</u>, we affirm the district court's grant of summary judgment for SEACOR and against PMI but vacate its judgment against Gray and remand for further proceedings, if necessary, and for entry of judgment.

In <u>Hoffpauir v. SEACOR Marine Corp.</u> and <u>Fleming v. GSI LLC</u> we vacate the district courts' orders granting summary judgment in favor of PMI, affirm the dismissal of Gray and remand those cases to the appropriate district court for further proceedings, if necessary, and for entry of judgment.