**Lois SCHERER, Plaintiff,**

v.

**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, and Laborers' International Union of North America Local 277, Defendants.**

No. 87–30267–RV.

United States District Court,
N.D. Florida,
Pensacola Division.

Dec. 19, 1988.

Ben R. Patterson, Patterson & Traynham, Tallahassee, Fla., for plaintiff.

Theodore T. Green, Susan M. Sacks, Laborers' Intern. Union, Washington, D.C., for defendants.

Robert R. McDaniel, Pensacola, Fla., for LIU/NA—Local 277.

## ORDER

VINSON, District Judge.

Pending are cross motions for summary judgment. The plaintiff has moved for summary judgment on Counts II and III of the amended complaint. (Doc. 46) Defendant Laborers' International Union of North America has moved for summary judgment on Counts I and II. (Docs. 26, 55) For the reasons set out below, I find that the plaintiff's motion must be DENIED. The defendant's motion must be DENIED on Count I, but GRANTED on Count II.

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and ad-

missions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202, 212 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). On a summary judgment motion, the record, and all inferences that can be drawn from it, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Furthermore, the court must consider the entire record in the case, not just those pieces of evidence which have been singled out for attention by the parties. *Clinkscales v. Chevron USA, Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987); *Keiser v. Coliseum Properties*, 614 F.2d 406, 410 (5th Cir.1980).

## I. *Facts*

Prior to February 20, 1986, there were two local unions affiliated with Laborers' International Union of North America (LIUNA) in the Pensacola, Florida, area. Local 277 was a state-certified collective bargaining unit for private employees, with about 80 members. Local 1306 was a state-certified collective bargaining representative for public employees. The latter included units representing janitorial employees of the School Board of Escambia County, Florida, and hospital workers at Eglin Air Force Base. Its members numbered approximately 200.

Roy Scherer, the husband of the plaintiff Lois Scherer, worked as business manager of Local 1306 for many years prior to his death in December 1984. In late 1975, or early 1976, the plaintiff was hired by Local 1306 as its office secretary. On or about February 5, 1976, the plaintiff was named business manager of Local 1306, and a salary of $50 per week was set for the position, retroactive to January 1, 1976.

In May 1977, the plaintiff was elected secretary-treasurer of the union, a position formerly held by her husband. At the time of her election, a salary of $100 per week was set for the secretary-treasurer's position. The plaintiff's term of office extended for three years until May 1980. At that time, she was re-elected secretary-treasurer of Local 1306 at a salary of $150 per week for another three-year term. The plaintiff was subsequently re-elected in 1983, and held the office until the dissolution of Local 1306 on February 20, 1986.

As secretary-treasurer, the plaintiff performed all clerical duties required to maintain the union's records. The local's "office" was the home of plaintiff and her husband, who remained business manager until his death. The plaintiff also kept the financial records of the local and paid all its bills.

During this time, Local 1306 suffered a poor financial condition. The plaintiff received her salary only sporadically from 1976 through 1982. According to her own records, she was owed $32,400 in back salary for the period from April 1976 through December 1982. In addition, the local was unable to pay its per capita tax[1] to the international. By February 1986, Local 1306 was approximately $12,200 in arrears to LIUNA.

The financial condition of Local 1306 was troublesome to LIUNA. After the death of Roy Scherer, Albert Gross, a regional representative of LIUNA for Florida, and R.P. Vinall, vice president of the international in charge of the Fort Worth–New Orleans region, which included Pensacola, began to investigate what should be done about Local 1306. In early 1985, Gross met with the plaintiff and suggested that she seek the business manager position. She declined, noting the financial condition of the local, and indicated that she wished to keep her full-time position with the United Way of Escambia County.

---

1. A per capita tax is a percentage of member-ship dues paid by the local to the international.

Gross and Vinall next contacted Fred Johnson, business manager for Local 277. They first arranged for Johnson to take over as business manager of Local 1306, so that its members would have representation. They also discussed with Johnson the possibility that Local 1306 would merge into Local 277. Johnson was receptive to the merger proposal, and on April 8, 1985, the membership of Local 277 voted unanimously to merge with Local 1306.

The negotiations between LIUNA and Local 277 concerning the merger continued for several months in 1985. LIUNA arranged for a lawyer and an accountant to consult with Local 277 on the legal and financial aspects of the merger. Gross discussed with Johnson the debts of Local 1306. He informed Johnson of the amount of the per capita tax debt and the fact that the plaintiff claimed back salary. However, Johnson never learned of the amount of plaintiff's claim until after the merger. Johnson was assured by LIUNA that the debts of Local 1306 would be wiped clean so that the new union could start with a clean slate.

In the fall of 1985, Johnson conducted several meetings of the various units of Local 1306. Each unit voted unanimously to merge with Local 277. After both locals had approved the merger, the international ordered that the merger be effected by February 20, 1986. Vinall wrote to LIUNA General President Angelo Fosco on December 17, 1985, and recommended that the merger be approved by the international. In this letter, he mentioned the large per capita debt of Local 1306. Fosco wrote back on December 31, and stated that "[i]n the event of a merger, the debit of Local Union 1306 will probably have to be wiped out as it appears there will not be funds available to pay this amount." Gross and John Tupes, a LIUNA accountant, were assigned to effectuate the merger.

Tupes was sent to Pensacola to assist Local 1306 in preparing its terminal financial reports to the Department of Labor and to the Internal Revenue Service. The plaintiff brought the records of Local 1306 from her home to Tupes' hotel room on February 20, 1986. Tupes drew up the forms with the statement of assets and liabilities prepared by plaintiff. The list included plaintiff's claim of back pay in the amount of $32,400, and this amount was recorded on the LM–3 form sent to the Department of Labor.

Local 1306's assets consisted of a check for $987.60 payable to the local from the School District of Escambia County, a check from National Maintenance, Inc. for $270, and the local's checking account balance of $3,514.29. The plaintiff endorsed the checks to Local 277, withdrew the balance from the checking account and turned it over to Local 277. Gross arranged for the change in state certification from Local 1306 to Local 277. LIUNA erased the per capita tax debt of Local 1306 in a letter to Vinall from Arthur E. Coia, General Secretary–Treasurer, dated March 4, 1986. The charter of Local 1306 was officially suspended on that same date.

The plaintiff now claims that either LIUNA or Local 277 owes her $32,400. She contends that during her discussions with Gross concerning the merger, he assured her that LIUNA would pay the debt. She also claims that Tupes agreed for LIUNA to pay her back salary during the transfer of records to Local 277. Both Tupes and Gross deny making such representations, and LIUNA itself denies that it is liable for this debt.

The plaintiff filed this suit on June 7, 1987, against LIUNA, alleging breach of contract. She claims that a representative of LIUNA entered into a contract with her in which LIUNA agreed to pay her $32,400 in exchange for her cooperation in transferring the assets of Local 1306 to Local 277. On December 31, 1987, she filed an amended complaint. In Count II, she alleges that LIUNA and Local 277 are liable to her for conversion of the assets of Local 1306 to her detriment. In Count III, she alleges that Local 277 is liable for the debt as successor to Local 1306. Local 277 has filed a cross-claim against LIUNA.

## II. *Discussion*

### A. *Jurisdiction*

■ The first issue I must address is subject matter jurisdiction. As courts of

limited jurisdiction, federal courts have the duty to examine whether jurisdiction is proper in a case, even if not raised by the parties. *See, e.g., Delta Coal Program v. Libman,* 743 F.2d 852, 854 (11th Cir.1984); *In re Carter,* 618 F.2d 1093 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). This is particularly true in cases removed from state court, such as this one. *See* 28 U.S.C. § 1447(c). In this case, the parties have not disputed the jurisdictional issue; however, I find that it does raise a substantial question which requires clarification.

The plaintiff filed this suit in the Circuit Court of Escambia County, Florida, against LIUNA, claiming breach of contract. She alleged that she was owed $32,400 in back salary by Local 1306, that LIUNA took over Local 1306, that at the time of this take over, LIUNA agreed to pay her the back salary, and that she had not yet received payment. LIUNA removed the case to this Court under this Court's federal question jurisdiction. *See* 28 U.S.C. § 1331. LIUNA stated that "the plaintiff is suing for alleged breach of an agreement between labor organizations." Jurisdiction was based on Section 301(a) of the Labor Management Relations Act [29 U.S.C. § 185(a)].

Since removal, the plaintiff has amended her complaint, adding two counts and one defendant. The plaintiff's breach of contract claim against LIUNA was retained as Count I of the amended complaint. In this count, the plaintiff alleges that LIUNA breached an agreement with her to pay the back salary owed by Local 1306. In Count II, the plaintiff has alleged that LIUNA and Local 277 converted the assets of Local 1306 to her detriment as a creditor of Local 1306. Count III is an action for the unpaid debt against Local 277 as the successor of Local 1306. In the jurisdictional allegations of the complaint, the plaintiff recited the basis for removal described above and stated that this Court has "pendent jurisdiction, if not original jurisdiction" over her state law tort and contract claims, but identified no further basis for federal jurisdiction.

■ A suit filed in state court may be removed to federal court only if it could have been filed in this Court originally. Where diversity of citizenship is not alleged, the complaint must raise a federal question in order for subject matter jurisdiction to be proper.[2] Whether a federal question is presented must be determined by the "well-pleaded complaint" rule; that is, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318, 327 (1987); *see also Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 7–12, 103 S.Ct. 2841, 2845–47, 77 L.Ed.2d 420 (1983).

■ A state court case may not be removed to federal court based on a federal defense, including the defense of federal pre-emption of the state law claim. *See Caterpillar Inc. v. Williams, supra,* 482 U.S. at 391–93, 107 S.Ct. at 2429–30, 96 L.Ed.2d at 327; *Franchise Tax Board v. Construction Laborers Vacation Trust, supra,* 463 U.S. at 9–10, 103 S.Ct. at 2846. However, where state law is completely pre-empted by federal law, then any claim allegedly based on pre-empted state law raises a federal question from its inception. *See Caterpillar Inc. v. Williams, supra,* 482 U.S. at 393–94, 107 S.Ct. at 2430–31, 96 L.Ed.2d at 328. Thus, a claim based on such state law would arise under the laws of the United States and necessarily states a federal claim. *See Franchise Tax Board v. Construction Laborers Vacation Trust, supra,* 463 U.S. at 24, 103 S.Ct. at 2854. One such area of complete pre-emption involves claims within the scope of Section 301(a) of the Labor Management Relations Act. *See Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In a suit to enforce private rights based on a contract within the scope

---

**2.** The allegations of the amended complaint indicate that diversity of citizenship is not present. Local 277 is a resident of Escambia County, Florida, and LIUNA is alleged to do business in Florida.

of Section 301(a), there is no cause of action based on state law. *Id.* at 558, 88 S.Ct. at 1236; *see Franchise Tax Board v. Construction Laborers Vacation Trust, supra,* 463 U.S. at 23, 103 S.Ct. at 2853. Therefore, in this case, I must determine whether the allegations of the plaintiff's complaint state a cause of action based on a contract within the scope of Section 301(a). In so doing, I must look at the substance of the complaint and not just the labels used in it. *See In re Carter, supra,* 618 F.2d at 1101.

Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Neither party has indicated that the contract involved in this case is a contract between an employer and a labor organization within the meaning of Section 301(a). Rather, federal jurisdiction is based on the existence of a contract between labor organizations which gave a right of payment of back salary to the plaintiff.

■ Ostensibly, none of the three counts of the amended complaint alleges a violation of a contract between labor organizations. Count I alleges breach of a contract between the plaintiff and LIUNA. Count II states an *action for conversation of* Local 1306 assets. Count III is an action against Local 277 for plaintiff's unpaid salary.

However, the factual allegations underlying all these claims indicate the existence of other agreements which may fall within the scope of Section 301(a). The plaintiff's causes of action arise from her employment contract with Local 1306 under which she claims $32,400 in back salary. The plaintiff alleges that LIUNA arranged a consolidation of Local 1306 and Local 277. As part of this consolidation Local 277 was to assume the assets of Local 1306, and LIUNA would take care of Local 1306's debts.

These factual allegations evidence several "agreements" involved in this transaction. First, the two locals agreed to merge. LIUNA allegedly brokered this merger because of its dissatisfaction with the financial affairs of Local 1306. According to the complaint, LIUNA approved the transfer of the assets of Local 1306 to Local 277 while assuming for itself the former's debts. Thus, LIUNA apparently agreed with Local 277 that the international would take care of Local 1306's debts if the local would take over its management and financial affairs. Although not expressly described in the complaint, there must have been some agreement between LIUNA and Local 1306 for the local's participation in the merger.

While the underlying basis for plaintiff's suit is her employment contract with Local 1306, her claims require that this Court consider and interpret several agreements among LIUNA, Local 277, and Local 1306. In essence, plaintiff's claim is that Local 1306's debt to her was assumed by either LIUNA or Local 277 by virtue of the agreements involved in the merger, and, therefore, it is a violation of one or more of these agreements for both defendants to deny this obligation. Only by interpreting the agreements involved in the merger can this Court determine which defendant, if either, is obligated to pay the plaintiff the money she seeks. The plaintiff's claims appear to implicate the interpretation of contracts between labor organizations, thus falling within the complete pre-emption of state law by federal law concerning Section 301(a).

■ The Supreme Court has addressed similar jurisdictional problems in the context of collective bargaining agreements. *See, e.g., Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *International Broth. of Electrical Workers v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987). The Court has held that, by enacting Section 301, Congress intended that federal courts fashion

a body of federal common law for resolving disputes arising out of labor contracts. *See Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957). The need for uniformity in the interpretation of such contracts requires that federal law be used as the exclusive rule of decision within the entire area covered by the statute. *See Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962). While this requires federal law to be applied in cases "on the contract," federal law must also be applied in cases implicating the interpretation of labor contracts.

For example, in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Court considered whether a tort claim by an employee against an employer for bad faith handling of disability benefits due under a collective bargaining agreement required application of federal common law. The Court held that a state law tort claim, the resolution of which is inextricably tied to interpretation of the terms of a labor contract, is pre-empted by Section 301.

> The interests in interpretative uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Id.* at 211, 105 S.Ct. at 1911.

In the *Allis–Chalmers* case, any attempt to assess liability on the part of the employer would have inevitably involved interpretation of the underlying collective bargaining agreement. *Id.* at 215, 105 S.Ct. at 1913. Thus, federal law had to be applied in that case, and, it therefore arose under the fed-

eral question jurisdiction of the district court.

The principles discussed above apply with equal force in this case. I find that the agreements among LIUNA, Local 277, and Local 1306 alleged in the complaint are "contracts" within the meaning of Section 301(a). *See United Assoc. of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981); *Retail Clerks Int'l Assoc. v. Lion Dry Goods, Inc.,* 369 U.S. 17, 28, 82 S.Ct. 541, 548, 7 L.Ed.2d 503 (1962); *J.I. Case Co. v. NLRB,* 321 U.S. 332, 334, 64 S.Ct. 576, 578, 88 L.Ed. 762 (1944). Furthermore, the merger agreement between Local 277 and Local 1306 and the agreements existing between LIUNA and the locals are "contracts between labor organizations" within the meaning of Section 301. *See United Assoc. of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v. Local 334, supra; Local 472 v. Georgia Power Co.,* 684 F.2d 721, 725–26 (11th Cir.1982); *International Assoc. of Machinists & Aerospace Workers, District Lodge No. 94, Local Lodge No. 1484 v. International Longshoremen's & Warehousemen's Union, Local 13,* 781 F.2d 685, 688 (9th Cir. 1986). Furthermore, even though the plaintiff is not a party to these contracts, she is a third-party beneficiary of one or more of these contracts. Her claim for recovery arises from an alleged breach of one or more of these contracts, and, therefore, her suit is one for which federal jurisdiction exists. *See Smith v. Evening News Assoc.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Alexander v. International Union of Operating Engineers,* 624 F.2d 1235, 1238 (5th Cir.1980); *Lewis v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers,* 826 F.2d 1310, 1312–14 (3d Cir.1987); *Lewis v. Local Union No. 100,* 750 F.2d 1368, 1373–74 (7th Cir.1984); *Kinney v. International Broth. of Electrical Workers,* 669 F.2d 1222, 1229 (9th Cir.1982).

Finally, I find that at least two of the plaintiff's claims are pre-empted by federal law under Section 301. She alleges that she is owed $32,400 in back salary by Local

1306. That organization no longer exists by virtue of its merger with Local 277. The plaintiff claims that either Local 277 or LIUNA or both are liable to her for these unpaid wages based upon the agreements entered into among these labor organizations. Assuming the facts pled are true, it may be a violation of one of these agreements for both organizations now in existence to deny her claim for back pay. Clearly, it is impossible to determine the rights of the plaintiff without interpreting the force and effect of the agreements among LIUNA, Local 277, and Local 1306. Therefore, with the exception of the alleged contract between the plaintiff and LIUNA, I find that the complaint does raise a federal question under Section 301(a), and jurisdiction is proper in this Court.

The only reported case I have found addressing this issue reaches a contrary conclusion. *See Local No. 1 v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers,* 461 F.Supp. 961 (E.D.Pa.1978), *affirmed in part, reversed in part,* 614 F.2d 846 (3d Cir.1980). In *Local No. 1,* the international ordered two locals to consolidate. The officers of Local No. 1 brought an action to enjoin the consolidation order. In addition, the local's business manager included in the suit his claim for back salary owed to him by the local against the consolidated local as the successor to Local No. 1.

The district court determined that it had pendent jurisdiction over the salary claim, and treated it as a purely state law cause of action. 461 F.Supp. at 974–75. The Third Circuit reversed on this issue, holding that the salary claim did not arise out of a common nucleus of operative fact with the claim to enjoin consolidation. 614 F.2d at 850–52. The Third Circuit also addressed the business manager's claim that his salary action raised a federal question, and rejected that contention. "Inasmuch as Bender's personal claim for salary arising out of an alleged contract of employment with Local 1 is not a suit for violation of a contract between an employer and a labor organization or between labor organizations themselves, we discern no federal

basis for jurisdiction over the salary claim under 29 U.S.C. § 185." *Id.* at 849 n. 3.

While I agree that an employment contract between an individual and a union does not fall within Section 301, I do not agree that under the circumstances of *Local No. 1* or this case, federal jurisdiction is lacking. In both cases, assuming the existence of a valid employment contract with the union, the question raised is whether the consolidated local is responsible for the obligations of the two prior locals. This question implicates the legal effect and interpretation of the consolidation agreement. And, as the district court in *Local No. 1* pointed out, it may also raise the issue of whether an international which arranges consolidation may be held liable for the obligations of the local which ceases to exist. 461 F.Supp. at 984.

I note that *Local No. 1* was decided before many of the cases relied upon in this order. I also find the conclusion reached here is consistent with the policy of federal pre-emption under Section 301. No resolution of the plaintiff's claims can be had without considering the legal effect of the merger agreement and the agreements between LIUNA and the two locals. These "contracts" directly implicate the course and conduct of labor relations among the organizations themselves, their members, and associated employers. It would be disruptive to labor relations if differing bodies of laws were applied to determine the legal effect of a merger agreement, for example, to have the legal effect of consolidation determined by state law for creditors of the locals but by federal law for the union, locals themselves, and their membership. *See Lewis v. International Broth., supra,* 826 F.2d at 1314; *Hansen v. Huston,* 841 F.2d 862 (8th Cir.1988). Therefore, I decline to follow the rationale of *Local No. 1* on the issue of jurisdiction and the applicability of federal law.

█ I find that the plaintiff's amended complaint raises a federal question under Section 301. The claim that the plaintiff and LIUNA contracted for LIUNA to pay the plaintiff $32,400 is a claim which arises

under state law. No contract between labor organizations is implicated by a purely personal contract between an individual and a union.[3] However, the plaintiff's "conversion" claim and her claim against Local 277 as successor to Local 1306 are federal claims arising under Section 301.

### B. *Plaintiff's claims.*

(1) *Count I.* In Count I, the plaintiff claims that LIUNA breached a contract with her for payment of her back salary. According to the plaintiff, LIUNA, through its agents Gross and/or Tupes, agreed to pay her $32,400 in exchange for her cooperation in transferring the assets of Local 1306 to Local 277. The plaintiff has not moved for summary judgment on this count, admitting that the testimony of Gross and Tupes disagrees with her own on the making of the alleged agreement. The record indicates disputed facts remain material to this issue.

LIUNA, however, has moved for summary judgment on Count I, raising several defenses. First, it argues that an international union cannot be held liable for the debts of a local union. *See, e.g., Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 216–18, 100 S.Ct. 410, 413–14, 62 L.Ed.2d 394 (1979). This argument is simply irrelevant to Count I. In this count, the plaintiff claims that LIUNA itself directly entered into a contract with her, which contract the union breached. Thus, she is not seeking to hold LIUNA liable for the debt owed by Local 1306, but rather for the amount she alleges LIUNA contracted to pay her. This defense cannot defeat the plaintiff's claim in Count I.

Second, LIUNA asserts that even if Gross or Tupes agreed to pay plaintiff the back pay, ostensibly on behalf of LIUNA, such a contract is unenforceable because neither international representative had the authority to bind the union. LIUNA claims that its constitution gives exclusive authority to its General Executive Board to expend funds. Article VIII, § 2(m), of the union constitution provides:

> The General Executive Board and the officers of the International Union shall be empowered and authorized to make such expenditures and payments out of the various funds of the International Union as in their judgment, they deem proper and necessary to carry out the objects, purposes, and policies of the International Union and to fulfill their duties and responsibilities as required by this Constitution.

Neither Gross nor Tupes was a member of the General Executive Board.

This argument is not persuasive. Section 2(m) may give the General Executive Board the authority to expend funds, but it does not preclude the Board from authorizing representatives of the international to expend funds. Indeed, Article XII, Section 2 specifically gives the Board the power to authorize representatives to act for the union. And, Article XII, Section 3 states that the union can be held responsible for acts of representatives authorized or ratified by the international.

The record in this case indicates that Gross kept LIUNA constantly informed of his activities in effectuating the merger of Local 1306 and Local 277. His contact with the international was R.P. Vinall, then sixth vice president of LIUNA, and in charge of the Fort Worth–New Orleans region. On December 17, 1985, after both unions had approved the merger, Vinall wrote the General President of LIUNA and explained the financial straits of Local 1306. In this letter, he states (emphasis supplied):

> For sometime now ... *I* have been attempting to straighten out the affairs of Local 1306.... After the death of Roy Scherer ... *I* contacted Local 277 and Fred Johnson.... *I* have been in the process of changing the certification of Local 1306 to Local 277 by PERK (the Florida Public Employees Law and

---

**3.** This conclusion suggests that removal was improper because the original complaint only alleged a contract between the plaintiff and LIUNA for payment of $32,400. Jurisdictional allegations may be amended at any time. 28 U.S.C. § 1653. Therefore, I treat the amended complaint as an amendment of jurisdictional allegations.

through the service contract act), so that Local 277 will be in a proper position to represent these people. *I* am now at this time ready to go ahead with the merger of the Local Unions.... Therefore, *I* recommend that as soon as *I* complete some arrangements on changing certification, that *I* be allowed to merge these two locals into Local 277 in Pensacola.

Angelo Fosco, the General President, replied on December 31, that LIUNA would not object to merger. In addition he stated: "In the event of a merger, the debit of Local Union 1306 will probably have to be wiped out as it appears there will not be funds available to pay this amount." Both Vinall and Fosco were members of the General Executive Board of LIUNA.

The correspondence among Fosco, Vinall, and Gross suggest that the merger of Locals 277 and 1306 was not simply conducted at the local level on the advice of Gross. Rather, the merger appears to have been actively sought and authorized by the international. As Vinall claimed responsibility for effecting the merger, it appears that Gross was acting for him. Therefore, I cannot find that Gross had no authority to "wipe clean" the debts of Local 1306, or that LIUNA may not have ratified whatever action Gross took in connection with the merger.

 Finally, LIUNA argues that, even if made, the alleged contract between it and the plaintiff cannot be enforced for want of consideration on behalf of the plaintiff.[4] LIUNA asserts that the plaintiff was under a duty to transfer the records and assets of Local 1306 to Local 277, and, therefore, her "cooperation" with LIUNA in doing so cannot be consideration for LIUNA paying her back salary. The general rule is that performance of a pre-existing duty to a promisor cannot amount to consideration necessary to support a contract. *See Restatement (Second) of Contracts* § 73 (1981); *Slattery v. Wells Fargo Armored Service Corp.*, 366 So.2d 157, 159 (Fla. 3d DCA 1979). Moreover, there is no

doubt that once the membership of Local 1306 voted to merge with Local 277, the plaintiff, as secretary-treasurer and custodian of the records, was under an obligation to transfer the records and assets of Local 1306 to Local 277.

However, the plaintiff owed this duty to the membership of Local 1306, and perhaps that of Local 277, not to LIUNA. The performance of a pre-existing duty may be consideration if the duty is not owed to the promisor. *See Restatement (Second) of Contracts* § 73 commend d (1981); *Restatement of Contracts* § 84(d) (1932); *Morrison Flying Service v. Deming National Bank*, 404 F.2d 856, 860–61 (10th Cir.1968), *cert. denied*, 393 U.S. 1020, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969); *Philips Electronics & Pharmaceutical Ind. Corp. v. Leavens*, 421 F.2d 39, 47 (3d Cir.1970). The reason for this rule is that the promisee gives up the opportunity to attempt to avoid performance of the duty to the third party. *See Morrison Flying Service v. Deming National Bank, supra*, 404 F.2d at 860–61.

In this case, the plaintiff may not have been able to avoid performance of her duty to Local 1306. However, the record indicates that she did avoid mentioning her claim for back pay during the transfer. Even though Gross discussed with Fred Johnson, Local 277's business manager, that the plaintiff was owed back pay, and Johnson spoke with the plaintiff several times concerning the merger, he never learned of the size of the debt. Furthermore, Gross told Johnson that the debts of Local 1306 would be wiped clean.

The record also indicates that Local 277 would not have gotten involved in the merger if it would have been required to assume the debts of Local 1306. Assuming Gross "agreed" with the plaintiff that LIUNA would pay her claim, her "cooperation" in the transfer of books and records apparently included her silence about the back pay. This would constitute consideration

4. The defendant also claims that the plaintiff cannot rely on the theory of promissory estoppel. However, as the plaintiff has not attempted to rely on this theory, there is no reason to consider it at this time.

even if she was obligated to transfer the records and assets to Local 277.

Accordingly, the LIUNA's motion for summary judgment on Count I is DENIED.

■ (2) *Count II.* Both the plaintiff and LIUNA have moved for summary judgment on Count II. In this count the plaintiff claims that LIUNA and Local 277 converted the assets of Local 1306 to her detriment. The Plaintiff identifies two items of property which she alleges were converted by the defendant: (1) $4,500 in cash belonging to Local 1306, and (2) the certification held by Local 1306 to represent employees of the School Board of Escambia County through which, the plaintiff alleges, the local received $28,782 in 1985. As a matter of law, I find that this claim must fail.

■ "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Restatement (Second) of Torts* § 222A(1) (1965). In order to maintain an action for conversion, one must have possession of the property or an immediate right to possession. *See, e.g., Restatement (Second) of Torts* §§ 224A–225 (1965). One with merely a lien on property with no right to possession cannot bring an action for conversion. *See, e.g., Dekle v. Calhoun,* 60 Fla. 53, 53 So. 14 (1910); *Seiff v. Presto Brick Machine Corp.,* 168 So.2d 700 (Fla. 3d DCA 1964).[5]

The plaintiff had no right to possession of the cash or certificate belonging to Local 1306. At best, her wage claim is an unsecured lien on the property of Local 1306 with no right to possession. Therefore, she cannot maintain an action for conversion of that property.

■ Furthermore, the plaintiff's action is primarily one for breach of contract. She claims that Local 1306 owed her back pay pursuant to an employment contract. Thus, her action is for recovery of an ordi-

nary debt based on a contract. Such a debt cannot be the subject of an action for conversion unless it is represented by a specific fund of money or a negotiable instrument. *See Belford Trucking Co. v. Zagar,* 243 So.2d 646 (Fla. 4th DCA 1970); *Advanced Surgical Technologies, Inc. v. Automated Instruments, Inc.,* 777 F.2d 1504, 1507 (11th Cir.1985); *Capital Bank v. G & J Inv. Corp.,* 468 So.2d 534, 535 (Fla. 3d DCA 1985).

> A mere obligation to pay money may not be enforced by a conversion action … and an action in tort is inappropriate where the basis of the suit is a contract, either express or implied.
>
> *Belford Trucking Co. v. Zagar, supra,* 243 So.2d at 648.

Thus, Count II is inappropriate as a cause of action to recover the plaintiff's back salary.

Accordingly, the plaintiff's motion for summary judgment on Count II is hereby DENIED. LIUNA's motion for summary judgment on Count II is hereby GRANTED. This count is DISMISSED as to both LIUNA and Local 277.

■ (3) *Count III.* The plaintiff has moved for summary judgment against Local 277 on Count III. In this count, the plaintiff claims that Local 277 is the successor union to Local 1306, and, as such, it assumed the obligations of her former employer. The defendant has raised several factual and legal matters which preclude entry of summary judgment for the plaintiff.

First, Local 277 disputes whether the plaintiff is owed the back salary. The only direct evidence supporting the existence of the debt is the plaintiff's own testimony and documents prepared under her direction in 1986. She has introduced no ledgers or other business records indicating whether she was or was not paid during the weeks for which she claims salary is owed.

---

5. In Counts II and III, unless otherwise noted, Florida law is cited for propositions of general

common law.

The record does reflect that the plaintiff held a position with Local 1306 for which a weekly salary was due. Also, there is no dispute that Local 1306 was unable to pay its bills to the international and that it was in unhealthy financial straits generally. Finally, the plaintiff has testified to the debt. This is sufficient to support a claim for back pay, but not to prove no material fact issues remain.

Second, Local 277 disputes the amount of the debt. The plaintiff claims that she is owed $27,300 for unpaid salary from April 1976 through December 1978; $3,900 for the period July 1, 1981, to December 31, 1981; and $1,200 for unpaid salary in 1982. The record indicates, and the plaintiff agrees, that from 1976 through May 1980, she was paid no more than $100 a week. From May 1980 to May 1983, she was receiving $150 a week. Both the $3,900 and $1,200 figures are within the attested salary ranges.

However, there is no evidence in the record to support the $27,300 figure. During the 33–month period for which she claims this money is owed, the plaintiff could have received a maximum of $14,300 in salary. Thus, even if the plaintiff proved her claim against Local 277, she would not be entitled to a judgment for the full amount she seeks.

■■■■ Local 277 also disputes "accepting" the indebtedness to the plaintiff, if it is in fact owed. This, however, does not appear to be a defense to Count III. The general rule on corporate mergers is applicable in the circumstances of this case concerning the rights and obligations of a successor local on matters outside collective bargaining issues. The surviving entity acquires all the rights and assets, and also becomes responsible for the liabilities and obligations of the merged union. *See* 19 *Am.Jur.2d* Corporations § 2625 (1982) (quoting Model Business Corporations Act).

The parties do not dispute that Local 1306 merged into Local 277 by agreement of both memberships, and that all the assets and records of Local 1306 were transferred to Local 277 by virtue of that merger. Local 277's defense is based on evi-

dence that LIUNA assured Local 277 that the debts of Local 1306 would be wiped clean prior to the merger. This appears to be the basis for Local 277's cross-claim against LIUNA, but it has not explained how it applies to the plaintiff.

■■■■ Local 277, however, has raised two other defenses which would be available to it, if it is held to be the successor to Local 1306. First, it argues that whatever contract Local 1306 entered with the plaintiff is unenforceable as violative of the Statute of Frauds. *See, e.g.,* § 725.01, *Fla.Stat.* (1987). But, the record does contain memorializations of this contract. The parties have introduced the minutes of Local 1306 for meetings at which the plaintiff was elected secretary-treasurer of the union and at which her salary was determined. The plaintiff alleges that she was paid a salary for duties performed as secretary-treasurer of the union. The writings in the record evidence the existence and terms of the employment contract on which she is suing.

■■■■ Second, Local 277 claims that the plaintiff's suit is barred by the statute of limitations. In a case such as this, where no federal statute of limitations is applicable, the Supreme Court has indicated that the most analogous state law limitation period should be applied. *See, e.g., DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 158–59, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). Under Florida law, an action founded on a written contract must be filed within five years from the date of accrual of the cause of action. § 95.11(2), *Fla.Stat.* And, if the action is founded on an unwritten contract, the action must be filed within four years. § 95.11(3), *Fla.Stat.* (1987).

The plaintiff's terms as secretary-treasurer during which her claims arose ran from May 1977 to May 1980 and May 1980 to May 1983. This suit was filed June 6, 1987, and Local 277 was added as a defendant by amendment on December 31, 1987. *See* Rule 15(c), Fed.R.Civ.P.; *Itel Capital Corp. v. Cups Coal Co., Inc.,* 707 F.2d 1253, 1258 (11th Cir.1983). Thus, while the

claims for 1981 and 1982 may fall within the statute, it now appears that the claim for earlier years is not timely.

The plaintiff has failed to prove that no disputed material fact issues exist on Count III. Accordingly, her motion for summary judgment on Count III is DENIED.

DONE AND ORDERED.