W. SHARP, Judge,
dissenting.
I respectfully dissent because I think Spaziani’s four-count complaint should survive appellees’ motion for summary judgment. The final judgment was premised on the ground that Spaziani was entitled to no relief on any of the four counts he pled[1] because he could prove only an oral three-year contract and it was barred by the statute of frauds.[2]
*745 In count I of his complaint, Spaziani alleged Croft Metals, Inc. breached its three-year employment contract with him. Joseph Bancroft is the majority shareholder and primary decision maker. According to Spaziani, Bancroft promised him a compensation package consisting of the following:
(1) Annual base salary of $62,000.00
(2) Three-year bonus plan consisting of .25 percent of profits in 1988, .50 percent of profits in 1989, and 1.00 percent of profits in 1990.
(3) Base salary increase of five percent on January 1, 1989 and another five percent increase on January 1, 1990.
(4) Stock options which would allow [Spaziani] to purchase Croft Metals capital stock with up to one-half of his annual bonus.
(5) [Spaziani] to have the use of a company automobile, in 1989 to be a Lincoln Town Car or a Ford Crown Victoria, with a new car every three years, automobile to include gasoline, oil, maintenance and insurance.
(6) [Spaziani] to have company health care benefits.
Spaziani alleged that he and Bancroft had several meetings in July 1988 to discuss his employment with Croft Metals. On July 25, 1988, Bancroft made the following entry in his “Red Book,” his daily business diary:
Monday, July 25 Meeting in office 10:30 A.M.
Joe S. 62,000. — 1989—¼ of Bonus if Quota “Met” change to ½ in 1989. 1990— 100% of Bonus Plan + car Quota. 10, Million above the year Net Sales $75,-700,025. 1987 Quota for 1989 will be 85.00 Million.
(R 653).
The statute of frauds, section 725.01, provides in part as follows:
725.01. Promise to pay another’s debt, etc.
No action shall be brought ... to charge any person ... or upon any agreement that is not to be performed within the space of one year from the making thereof, ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by him thereunto lawfully authorized.
On appeal, Bancroft argues that his diary entry does not satisfy the requirements of the statute of frauds for three reasons: 1) the document is not signed by Bancroft; 2) the document does not set forth the essential terms of the alleged employment contract with the degree of certainty by which they can be known or understood without recourse to parole evidence; and 3) a copy of that page of the diary was never given to Spaziani.
Section 725.01 does not contain a delivery requirement and the weight of authority appears to be that delivery is unnecessary, except in certain situations not applicable here. 4 Williston on Contracts § 579A (3d Ed. 1961). As Professor Williston notes:
Delivery of the signed memorandum is not necessary to make it effective as evidence of the previous oral contract unless by its terms, the oral contract is not to be consummated until a memorandum has been delivered. Absent that condition upon the binding effect of the oral contract, non-delivery does not affect the probative value of the signed memorandum to satisfy the requirements of the statute of frauds.
The Restatement also notes that delivery is generally unnecessary.
b. Communication; delivery. There is no requirement that a memorandum be communicated or delivered to the other party to the contract, or even that it be known to him or to anyone but the signer. A memorandum may consist of an entry in a diary or in the minutes of a meeting, or a communication to or from an agent of the party, of a public record, or of an informal letter to a third person
[[Image here]]
Restatement (Second) of Contracts § 133 cmt. b (1981). The Restatement gives the following to illustrate this point:
2. A writes to B the following letter:
*746 “Dear B: I will employ you as superintendent of my mill for a term of three years from date, at a salary of $28,000 a year. Let me know if you wish to accept this offer. [Signed] A.”
B accepts the offer orally, The letter is a sufficient memorandum to charge A.
Id., illus. 2. Thus the fact that the diary entry was not delivered to Spaziani is of no consequence.
Bancroft is correct that the note or memorandum must contain the essential terms of the parties’ agreement or transaction in order to satisfy the statute of frauds. First Guaranty Corporation v. Palmer Bank & Trust Co. of Fort Myers, 405 So.2d 186 (Fla. 2d DCA 1981). However, the note or memorandum may be in almost any possible form, including receipts, telegrams, letters, advertisements, or minutes or record books of a business or corporation. 4 Williston on Contracts § 568; 2 Corbin on Contracts § 508.
The Restatement sets forth the general requirements of a memorandum:
§ 131. General Requisites of a Memorandum
Unless additional requirements are prescribed by the particular statute, a contract within the Statute of Frauds is enforceable if it is evidenced by any writing, signed by or on behalf of the party to be charged, which
(a) reasonably identifies the subject matter of the contract,
(b) is sufficient to indicate that a contract with respect thereto has been made between the parties or offered by the signer to the other party, and
(c) states with reasonable certainty the essential terms of the unperformed promises in the contract.
Restatement (Second) of Contracts § 131 (1981).
In Heffernan v. Keith, 127 So.2d 903 (Fla. 3d DCA 1961), the court held that a telegram, together with certain other documents, constituted sufficient memoranda to take the transaction out of the statute of frauds. In that case, the defendant listed property for sale with a broker. There was an exchange of letters between the broker and the defendant regarding the proposed sale of land. The letters established that the defendant gave to the broker the legal description of the property and his asking price of $10,000 net. In addition, the defendant gave certain terms for deferred payments which he would be willing to accept. The broker obtained a deposit receipt from the plaintiff agreeing to purchase the property for $11,000, which included a real estate brokerage commission of $1,000. The contract also provided for payment upon a deferred payment schedule different from that authorized by the defendant. In addition, the proposed agreement contained certain other provisions. The broker then telephoned the defendant stating that he had a written offer signed by the plaintiff and the broker read the deposit agreement to the defendant over the telephone. The defendant sent the broker a telegram, which read as follows: “Accept $10,000 net for 5 acres 125th Avenue deal to close by March 9th.” The telegram was specifically requested by the broker to confirm acceptance of the transaction as contained in the deposit receipt agreement.
The defendant argued that the telegram was not sufficient as a memorandum of the transaction because it did not by its terms refer with sufficient definiteness to the deposit receipt which contains the agreement sought to be enforced. The court rejected this argument noting that the telegram referred to a transaction which the defendant denoted as the “125th Avenue deal” and which he described as involving a payment of $10,000 net to him. The identification of the sale as being the same transaction referred to in the telegram was not challenged by affidavit or otherwise. The court noted that the defense of the statute of frauds is to be affirmatively pleaded and established. If the defense is that the memorandum of the contract sought to be enforced is so uncertain and indefinite as to be unenforceable, the burden is on the person asserting that defense to demonstrate the indefiniteness or uncertainty. The court held that the plaintiff had met the requirements of the statute by presenting *747 a telegram which by its terms referred to a certain proposed contract and the broker’s testimony established that the proposed contract identified in the telegram was that set forth in the deposit receipt agreement. The court held that these documents were sufficient to satisfy the statute of frauds.
In Clark v. Larkin, 172 Kan. 284, 289 P.2d 970 (1952), the court held that a check for a $1,000 down payment for the purchase of real property was sufficient to satisfy the statute of frauds. The check contained a notation that the down payment was “to apply on 405 East “A” at $17,000 balance of $7,000 to be paid on approval of abstract and $9,000 to be paid in 5 years at 5%.” The court noted that in the light of common, everyday business dealings, the check and notations clearly indicated that the defendant, as maker of the check, was purchasing from payee, the owner, certain real estate described as “405 East A” for the sum of $17,000, that the amount of the check ($1,000) was a down payment, that the sum of $7,000 was to be paid upon approval of the abstract of title, and that the balance of $9,000 was to be paid in 5 years with interest at the rate of 5%. Since there was nothing left to conjecture or speculation with respect to the parties, the purchase price, the amount of the down payment, or the financing, the check satisfied the statute of frauds.
In the present case, the entry in Bancroft’s diary arguably sets out a reference to Spaziani, salary of $62,000, terms of his three-year bonus participation and indirect compensation (a car). Gerald Abdalla, the executive vice president and corporate counsel for Croft, testified in his deposition that salary and bonus participation are the “prime factors” of employment by Croft Metals, Inc. In my view, the reference to Spaziani, his salary, three years’ bonus and car, makes the entry in Bancroft’s diary sufficiently definite to meet the requirements of the statute of frauds.[3] Further, Spaziani, in fact, was hired, and compensated by Croft Metals, Inc. on the basis set forth in the diary for almost one year prior to his discharge. Of course, the fact that a writing satisfies a requirement of the statute does not in itself establish the existence of the alleged contract. Khoshnou v. Paine, Webber, Jackson, & Curtis, Inc., 525 So.2d 977 (Fla. 5th DCA 1988). Thus Spaziani at trial would have the burden of proving that there was such a contract and its terms. Id.
The diary entry poses a further problem regarding the statute’s requirement of a signature. The courts have been very liberal in defining “signature.” But we have found no case which dispenses with the requirement altogether.
The UCC also contains a “statute of frauds” [4] which requires a signature. The comment to this section notes that the word “signed” includes any authentication which identifies the party to be charged. 19A F.S.A. p. 121, § 672.201 UCC cmt. 1 (1978). The comment to the general definition section of the UCC provides as follows:
‘Signed’ ... The inclusion of authentication in the definition of ‘signed’ is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use *748 common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.
§ 19A F.S.A. p. 65, 672.201, UCC cmt. 39 (1978).
The cases cited by Spaziani on this issue are not helpful. In Bader Brothers Transfer & Storage, Inc. v. Campbell, 299 So.2d 114 (Fla. 3d DCA), cert. denied, 304 So.2d 450 (Fla.1974), the court held that written statements containing trucking information were sufficient memoranda of the agreement between the trucking company and its drivers. However, there is no reference to whether the sheets were signed or not.[5] In Heffernan v. Keith and Ashland Oil, Inc. v. Pickard, 269 So.2d 714 (Fla. 3d DCA 1972), cert. denied, 285 So.2d 18 (Fla.1973), courts held that telegrams sent by the defendants were sufficient to satisfy the statute of frauds. Telegrams, however, are considered to be “signed” by the affixing of the senders’ name on the telegram under the authority of the telegraph company as agent for the sender. See Heffernan (telegram was considered signed where the defendant admitted the sending of the telegram and therefore admitted the authority of the telegraph company to affix his name to the telegram).
As was noted above, the courts have been liberal in meeting the signature requirement. Even printed names on letterheads or order blanks may be adopted and used as an authenticating signature. 2 Corbin on Contracts § 521. Here Bancroft admitted that he personally made the entry in his business diary. The record further establishes he made it in the presence of Spaziani while they were deciding on Spa-ziani’s terms of employment. Spaziani testified in his deposition that Bancroft told him there was no need for a written contract, and that he always went by his Desk Book memos in running the company.
The historical purpose of the statute of frauds was to protect defendants from false and fraudulent testimony that the defendant had orally agreed or promised something relating to the class of cases described in the statute. Rohlfing v. Tommorow Realty & Auction Co., 528 So.2d 463 (Fla. 5th DCA 1988). See also 4 Willi-ston on Contract § 567A (statute of frauds was intended to guard against the perils of perjury and error in the spoken word). As the Restatement points out:
c. Rationale. The primary purpose of the Statute is evidentiary, to require reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made. The contents of the writing must be such as to make successful fraud unlikely, but the possibility need not be excluded that some other subject matter or person than those intended will also fall within the words of the writing. Where only an evidentiary purpose is served, the requirement of a memorandum is read in the light of the dispute which arises and the admissions of the party to be charged; there is no need for evidence on points not in dispute.
The suretyship and marriage provisions of the Statute perform a cautionary as well as an evidentiary function ... The land contract provision performs a channeling function ... Even where these provisions are involved, however, there is no evidence of a statutory purpose to facilitate repudiation of firm oral agreements fairly made, to protect a promisor from temptation to perjure himself by false denial of the promise, or to reward a candid contract-breaker by denying enforcement, (emphasis supplied)
Restatement (Second) Contracts § 131 cmt. c (1981).
In this case authenticity of the diary entry, its authorship, and its intended purpose were established by this record for *749 purposes of summary judgment. Since there is no possibility that the entry was fraudulent, there appears to be no need for an actual “signature” on the entry page itself. Thus the finder of fact could reasonably infer Bancroft’s intent to authenticate the diary entry from the fact it is in his own handwriting, and was placed there by himself as an important business record. This is similar to the following illustration:
2.A and B make an oral contract within the Statute. A writes a memorandum stating the terms which begins, “I, A, make the following contract with B.” A then delivers the memorandum to B. This is A’s signature if the trier of fact infers A’s intent to authenticate the writing.
Restatement (Second) Contracts § 134 illus. 2. Under these circumstances, I disagree that Croft Metals and Bancroft were entitled to summary judgment based on the statute of frauds.

. The four counts were: 1) breach of an employment contract; 2) common law fraud; 3) wrongful discharge based on a promise of permanent employment; and 4) wrongful discharge because Spaziani refused to commit an antitrust violation.

. § 725.01, Fla.Stat. (1991).

. Compare Green v. Royal Palm Beach Colony, Inc., 292 So.2d 388 (Fla. 3d DCA 1974) (letter which merely stated that plaintiff would be employed by the defendant during the seasonal months of its business for three years did not contain the essential terms of the employment contract with the degree of certainty by which they could be known or understood without recourse to parole evidence and therefore did not satisfy the statute of frauds); Socarras v. Claughton Hotels, Inc., 374 So.2d 1057 (Fla. 3d DCA 1979), cert. denied, 385 So.2d 760 (Fla.1980) (note signed by vender which failed to identify ultimate purchasers, was unclear as to how financing arrangements would work or when purchase money mortgage payments would begin, did not identify items of personal property which would be retained and did not set forth terms of subordination of purchase money mortgage, did not contain all of the essential terms necessary to make an enforceable contract for the sale of land).

. § 672.201, Fla.Stat. (1991).

. The same is true for Scherer v. Laborers' International Union of North America, 746 F.Supp. 73 (N.D.Fla.1988) in which the court held that minutes of meetings of a union constituted sufficient memoranda of the existence and terms of an employment contract for the union secretary/treasurer.